RECEIVED

MAR 25 2010

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal No. 3:09-cr-98 |
| v. | ) | |
| | ) | |
| MARY LEE REINKING, | ) | PLEA AGREEMENT |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY AGREED by and between the plaintiff, the United States of

America, and the defendant, MARY LEE REINKING, with the defendant's attorney, as follows:

## A.  CHARGES

1.      Subject Offense. The defendant will plead guilty to Count 5 of the

Indictment charging her with wire fraud in violation of Title 18, United States Code, Sections

1343 and 2.  If the defendant abides by the terms and conditions of this plea agreement, then the

government will dismiss Counts 1, 2, 3 and 4 after sentencing on Count 5.

2.      No Further Prosecution. The United States of America agrees that the

defendant will not be charged in the Southern District of Iowa with any other federal criminal

offense arising from or directly relating to this investigation.  However, this agreement does not

apply to (1) any crimes of violence, and (2) any offense committed after the execution of this

agreement.

## B.  CONSEQUENCES OF PLEA

3.      Statutory Penalties. Count 5 is punishable by a term of imprisonment of

up to 20 years imprisonment, a fine of up to $250,000, or both, a term of supervised release of up

to 3 years, and a $100 special assessment. The defendant may also be liable for restitution.

Supervised release is a period of time following incarceration when defendant's behavior still will be supervised. During this time, defendant cannot commit a crime, use drugs, possess a firearm, and other standard conditions. If defendant violates any of the terms of supervised release, defendant can be sent back to prison for the entire period of supervised release, without getting credit for any time successfully completed.

        4.     <u>Detention</u>. Provided the defendant complies with all terms of this agreement, fully cooperates with the United States Probation Office in the preparation of a presentence report, does not appear to be mentally at risk to harm herself or any other person, and does not commit any bond violations, the government will not seek detention of the defendant prior to sentencing.

## C. SENTENCING CONSIDERATIONS

        5.     <u>Sentencing Guidelines - Factors</u>. The sentence imposed will be based upon consideration of the statutes and United States Sentencing Commission Guidelines applying to this case. Although the provisions of the Sentencing Guidelines are not mandatory, they are advisory and the parties understand that the district court will consider them, along with the factors set forth in Title 18, United States Code, Section 3553(a), in determining the sentence. The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which include but are not limited to the following:

        a.     the applicable guideline, with the parties stipulating that the applicable guideline is U.S.S.G. §2B1.1 with a base offense level of 7;

        b.     the amount of loss, with the parties stipulating that the amount of loss was more than $70,000, but not more than $200,000, accordingly, pursuant to §2B1.1(b)(1)(E) or (F), 8 or 10 offense levels will be added;

- 2 -

c.     the defendant's criminal history (prior convictions);

d.     acceptance of responsibility, with the parties stipulating that the defendant receive a three-level decrease of offense level, provided the defendant abides by all terms of this plea agreement, does not commit any bond violations while on pre-trial or pre-sentencing release, and fully cooperates with the United States Probation Office in the preparation of the presentence report; and

e.     the defendant's role in the offense; to be determined at the time of sentencing.

6.     <u>No Promises</u>. The United States makes no representations or promises as to the sentence to be imposed, as this is solely within the District Court's discretion. Although the parties may have discussed the possibilities of various factors having an impact on the sentence, and the parties have set forth above certain agreements concerning those factors, the District Court is not bound by such discussions or agreements and is free to make its own determinations on sentencing issues. The parties also agree that no such discussion or agreement has resulted in any express or implied promise or guarantee concerning the actual sentence to be imposed.

7.     <u>No Right to Withdraw Plea</u>. The defendant understands that the defendant will have no right to withdraw the defendant's plea if the sentence imposed or the application of the United States Sentencing Commission Guidelines is other than what the defendant anticipated.

8.     <u>Evidence at Sentencing</u>. The defendant, the defendant's attorney, and the government's attorney will be permitted to make whatever comment and evidentiary offer they deem appropriate at the time of the guilty plea, sentencing, or any other proceeding related to this case, provided such offer or comment does not violate any other provision of this agreement.

- 3 -

The parties are also free to provide all relevant information to the United States Probation Office for use in preparing a pre-sentence report.

       9.     Fines/Costs. Issues relating to fines and/or costs of incarceration are not dealt with in this agreement, and the parties are free to espouse their respective positions at sentencing.

      10.    Special Assessment. The defendant agrees to pay to the United States a special assessment of $100.00 per count, as required by Title 18, United States Code, Section 3013. The defendant agrees to make such payment (by cashiers check or money order payable to "Clerk, U. S. District Court") to the Clerk of the United States District Court for the Southern District of Iowa within two weeks (14 days) of the execution of this agreement or by the time of the guilty plea, whichever occurs first.

      11.    Full Payment of Restitution. The parties agree that the defendant shall be ordered to pay restitution in an amount to be determined by the Court at or about the time of sentencing. If the Court determines that the defendant is unable to make immediate full payment of all restitution, the defendant shall be required to make restitution payments as a condition of any period of supervised release imposed, pursuant to a payment plan established and ordered by the Court. The defendant understands that the failure to pay these obligations--subject to Defendant's good faith ability to pay--may be considered a breach of the defendant's probation or supervised release, and may result in an additional period of imprisonment being imposed.

      The defendant agrees to timely meet with any persons designated by the United States Attorney's Office for the purpose of identifying all assets owned by the defendant in whole or in part. The defendant also agrees to transfer any and all assets to the victims or to

- 4 -

liquidate any and all assets for the purpose of making restitution as directed by the United States
Attorney's Office. Further, the defendant agrees to timely execute any and all documents
necessary to effectuate transfer of assets or liquidation of assets for the purpose of making
restitution.

    Failure of the defendant to provide truthful information about assets and to
otherwise agree to facilitate restitution as set forth above would be a material breach of this
agreement and potentially subject the defendant to additional charges arising from this
investigation.

## D. COOPERATION

    12. Full Cooperation. The defendant agrees to fully cooperate with the United
States in its investigations within the Southern District of Iowa and elsewhere, and will provide
complete and truthful information to the attorneys and law enforcement officers of the United
States, any State, and any local authority, any federal grand jury, and any Court. The defendant
will truthfully answer all questions concerning any criminal matters of which the defendant has
knowledge, and the defendant will not withhold any information. The defendant will neither
attempt to protect any person or entity through false information or omission, nor falsely
implicate any person or entity. The defendant will not take any action which would obstruct,
impede, interfere with, inhibit, or disclose the pending investigation.

    13. Financial Statement. The defendant agrees to fully and truthfully
complete the financial statement, and provide the United States Attorney's Office with any
information or documentation in the defendant's possession or control regarding the defendant's
financial affairs.

- 5 -

14.     Immediate Debriefing.  The defendant agrees to be debriefed by law enforcement officers at anytime following the execution of this agreement.

15.     Truthful Testimony.  The defendant agrees to tell the truth at all times, whether it be during this investigation or as a witness at trial, and regardless of who asks the questions (the prosecutor, the law enforcement agent, the judge, or the defense attorney).  In the event the defendant should be called as a witness, the defendant's failure to provide truthful information will render this agreement voidable at the sole discretion of the United States, and will subject the defendant to a prosecution for perjury which is punishable by a fine of not more than $250,000.00 and a term of imprisonment of not more than five years, or both such fine and imprisonment.

16.     Debriefing Statements - Limitation of Usage.  Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the United States agrees not to use against the defendant any self-incriminating information provided by the defendant under this agreement. This paragraph notwithstanding, the United States may use against the defendant any statements made by defendant prior to the parties entering into this agreement, or, if applicable, any prior proffer agreement.  The United States may also use any evidence developed independent of the defendant's self-incriminating statements.  Further, as provided below, the United States may use against the defendant statements made by defendant under this plea agreement:

    a.     if the Defendant admits conduct in an interview or debriefing and then denies the same or presents evidence to the contrary at any hearing subsequent to the signing of this plea agreement; or,

    b.     to the extent as provided for in the following paragraph "Breach–Use of Information".

- 6 -

17.    Effect of a Law Violation.  Any violation of law or any violation of pretrial release conditions committed by the defendant after the date of this agreement will render this agreement voidable at the sole discretion of the United States.

18.    Breach - Waiver and Use of Information.  If the defendant breaches the terms and conditions of this agreement, the government is free to use against the defendant any statement, including Attachment A-Stipulation of Facts of this plea agreement, and any statements given by the defendant in debriefings, interviews or during any testimony.  Such statements or testimony may be used against the defendant in any criminal prosecution, including but not limited to prosecutions of the instant offense, perjury, or obstruction of justice. The defendant waives his rights under Rule 410 of the Federal Rules of Evidence.  Therefore, when the defendant executes the plea agreement and the Stipulation of Facts, the defendant understands that admissions to the court at the time of plea or at any other time, and statements to the Government herein, and thereafter, are admissible against defendant.  Therefore, should the defendant fail to plead guilty pursuant to this plea agreement or move to withdraw the plea or to set aside the conviction, defendant's admissions may be used against defendant in the Government's case-in-chief or otherwise, during the prosecution of this case or any future prosecution.

19.    Polygraph Examination.  The defendant agrees to submit to a polygraph examination at the discretion of the United States.  The polygraph examination shall be at the United States' expense, and shall be performed by a polygraph examiner of the United States' choice.

- 7 -

20.     <u>Access to Defendant Upon Entry Into Plea Agreement</u>. As of the date the
parties entered into this plea agreement, the defendant and the defendant's attorney agree that the
defendant will be available to perform the cooperation provided by this plea agreement without
the United States first notifying and receiving authorization from the defendant's attorney.
Attorneys and investigators acting for the United States have standing authority to request the
defendant to provide cooperation required by this agreement. If the defendant elects to speak to
anyone other than attorneys and investigators acting for the United States about criminal activity,
the defendant shall, prior to discussing such information with such other person, give notice to
United States Attorney a reasonable time in advance of such discussion to allow representatives
of the United States to be present for such discussion.

**E.  SUBSTANTIAL ASSISTANCE**

21.     <u>Government Motion</u>. Should the defendant fully comply with all the terms
and conditions of this plea agreement and the United States Attorney concludes that the
defendant has provided substantial assistance in the investigation or prosecution of one or more
other persons who have committed an offense, the United States Attorney, <u>in his sole discretion</u>,
may file a motion requesting the Court to depart from the sentencing guidelines and/or to
sentence the defendant below a level established by statute as a minimum sentence (hereafter
"substantial assistance motion"). Such motion may be made pursuant to Title 18, United States
Code, Section 3553(e), or  Section 5K1.1 of the United States Sentencing Guidelines, or both, or
after sentencing pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. The
decision to file a motion for departure and what type of motion to file will be in the sole
discretion of the United States Attorney, and the defendant understands that the United States

Attorney will decide whether the defendant has cooperated sufficiently to warrant a motion for downward departure. The defendant further understands and agrees that a proffer interview or a debriefing statement does not, by itself, necessarily constitute substantial assistance to the government and that a motion for downward departure may not be filed until the expiration of one year from the date of sentencing or until the defendant has fully completed cooperation, whichever first occurs. Completion of the defendant's cooperation will be determined by the United States Attorney, in his sole discretion. The defendant also understands that if a substantial assistance motion is filed, the Court will decide whether the Defendant has provided substantial assistance and, if so, the amount of reduction in sentence that is to be granted.

22.   Amount of Reduction. If the United States files a substantial assistance motion, the appropriate reduction in sentence, if any, shall be determined by the Court for reasons that may include, but are not limited to, consideration of the following:

a.   the Court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

b.   the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

c.   the nature and extent of the defendant's assistance;

d.   any injury suffered, or any danger or risk of injury to the defendant or his/her family resulting from defendant's assistance;

e.   the timeliness of the defendant's assistance;

f.   any benefit the defendant may have received under the terms of the plea agreement;

g.   any obstruction of justice, or attempted interference with, or disclosure of the investigation by the defendant, whether before or after entering into this plea agreement;

h.     any violation of any criminal statute or ordinance by the defendant after entry into this plea agreement;

I.     any violation of the terms of this plea agreement by the defendant.

23.     <u>Waiver of Speedy Trial.</u> The defendant waives and agrees to waive any and all rights under the Speedy Trial Act and understands and agrees that sentencing may be delayed until the cooperation phase of this agreement has been completed. The defendant stipulates that such a delay is in the defendant's best interest and in the interest of justice and constitutes full and sufficient grounds for the District Court to find that any delay in the defendant's case is excludable time in computing compliance with any federal speedy trial requirements which may apply. This waiver is necessary so that the District Court will have the benefit of all relevant information regarding the defendant's cooperation at the time of sentencing. Completion of the defendant's cooperation will be determined by this United States Attorney Office, in its sole discretion.

## F.  WAIVER OF APPEAL AND § 2255 RIGHTS

24.     <u>Limited Waiver of Appeal Rights.</u> The defendant hereby knowingly and expressly waives any and all rights to appeal defendant's conviction in this case, including a waiver of all motions, defenses and objections which defendant could assert to the charges or to the Court's entry of Judgement against defendant, and any and all issues inhering therein, including review pursuant to Title 18, United States Code, Section 3742, of any sentence imposed, except for the following:

a.     The right to timely challenge the defendant's conviction and sentence should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the substantive basis of defendant's plea of guilty and resulting conviction fails to state a crime upon which defendant could be convicted.

- 10 -

      b.      Any issue solely involving a matter of law brought to the District Court's attention at the time of sentencing concerning which the Court agrees further review is needed.

      25.     <u>Limited Waiver of Post-Conviction Review</u>. The defendant further knowingly and expressly waives any and all rights to contest her conviction of the subject charges in any post-conviction proceedings, including any proceedings under Title 28, United States Code, Section 2255, **subject to the exceptions set forth in the preceding paragraph,** and the following:

      a.      The right to seek post conviction relief based on ineffective assistance of counsel or prosecutorial misconduct if the grounds for such claim are not known to the defendant or were not reasonably known at the time defendant enters a plea pursuant to this plea agreement.

      26.     <u>Effect of Filing an Appeal</u>. It is a material breach of this Agreement for the defendant, in contravention of the foregoing, to file a petition for post-conviction review of the defendant's conviction or sentence, or to file any notice of appeal or other collateral attack to contest the conviction or sentence.

## G. GENERAL MATTERS

      27.     <u>Voluntariness of Plea</u>. The defendant acknowledges voluntarily entering into this plea agreement, and the defendant is pleading guilty because the defendant is guilty. The defendant further acknowledges entering into this agreement without reliance upon any discussions between the United States and the defendant (other than those described in this plea agreement), without promise of benefit of any kind (other than any concessions contained in this plea agreement), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges understanding the nature of the offenses to which the defendant is pleading guilty, including the penalties provided by law.

28.   <u>Waiver of Rights.</u>  In connection with the defendant's plea of guilty

pursuant to this agreement, the defendant acknowledges that the defendant has been informed of,

and understands, the following:

a.   the right of the United States, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

b.   the right to plead not guilty, and to persist in that plea;

c.   the right to a jury trial;

d.   the right to be represented by counsel – and if necessary to have the court appoint counsel – at trial and at every other stage of the proceeding;

e.   the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

f.   the defendant will have waived these trial rights upon the District Court's acceptance of the defendant's plea of guilty.

29.   <u>Limited Scope of Agreement.</u>  This agreement does not limit, in any way,

the right or ability of the United States to investigate or prosecute the defendant for crimes

occurring outside the scope of this agreement.  Additionally, this agreement does not preclude

the United States from pursuing any civil or administrative matters against the defendant,

including, but not limited to, civil tax matters and civil forfeiture, which arise from, or are related

to, the facts upon which this investigation is based.  This agreement binds only the parties hereto.

It does not bind any state or local authority and does not bind any federal authority other than the

United States Attorney for the Southern District of Iowa.

30.    <u>Victims not a party to this Agreement.</u> The defendant understands that victims in this case are not parties to this Agreement and so resolution of the criminal charges does not impact any pending civil action by victims against the defendant.

31.    <u>Entire Agreement</u>. This plea agreement, and any attachments, constitute the entire agreement between the parties. No other promises of any kind, express or implied, have been made to the defendant by the United States or by its agents.

32.    <u>Factual Stipulations</u>. Attached hereto as Attachment "A", and incorporated by reference herein, are factual stipulations entered into between the parties, including the factual stipulations of the defendant's offense conduct relating to each subject offense.

33.    <u>Venue</u>. The parties understand that the conduct underlying the offense was committed in whole or in part in the Southern District of Iowa, and the United States District Court, Southern District of Iowa, Davenport Division, is a proper venue for this case.

34.    <u>Use of Iowa Cable Network</u>. The defendant and the defendant's attorney agree that the Iowa Cable Network may be used for any hearing subsequent to the signing of this plea agreement, including the plea proceeding and sentencing.

35.    <u>Execution/Effective Date</u>. This agreement does not become valid and binding until the Plea Agreement, the Attachment A (Stipulation of Facts) are executed by each of the parties and their counsel shown below, and said original documents or copies are received at the United States Attorney's Office, 131 E. 4th Street, Suite 310, Davenport, Iowa 52801, (563) 449-5433 (fax). The United States Attorney's Office may withdraw this plea agreement

offer at any time prior to its acceptance and execution by the defendant and receipt of the

documents at the United States Attorney's Office and signature.

        The undersigned hereby accept and agree to the terms and conditions set forth in

this Plea Agreement.

_March 25, 2010_
Date

     Mary Lee Reinking
     Defendant

_3-25-40_
Date

     ANDREW LARSON
     Attorney at Law
     3610 25th Street, Suite 2
     Moline, IL 61265
     (309) 757 7500
     (309) 757 7504 (fax)
     andrew@andrewmlarson.com

     Nicholas A. Klinefeldt
     United States Attorney

_3/25/10_
Date

     By: Richard D. Westphal
     Assistant United States Attorney
     131 East 4th Street, Suite 310
     Davenport, IA 52801
     Tel: (563) 449-5432
     Fax: (563) 449-5433
     Rich.Westphal@usdoj.gov

- 14 -

**ATTACHMENT A**
**STIPULATION OF FACTS**

COMES NOW the undersigned Assistant United States Attorney for and on behalf of the United States of America, plaintiff in the above captioned matter, and defendant Mary Lee Reinking, and the defendant's attorney, Andrew Larson, and hereby stipulate and agree that the following facts are true and correct and may be used by the District Court to establish a factual basis for the plea of guilty to be entered by defendant pursuant to the plea agreement and for purposes of sentencing:

1. During the period of August 2004 through August 2006, Robert Herdrich and Darryl Hanneken purchased numerous rental properties, almost all multi-unit ones, in Davenport, IA. In connection with two of the purchases, Natalie Long and Mary Lee Reinking, both employees of a mortgage brokerage, Crow Valley Mortgage located in Bettendorf, IA, knowingly provided material false information to lenders concerning the assets, income, and employment of Herdrich and Hanneken in order to qualify them for the loans. Long and Reinking also processed the mortgage applications when they knew or should have known that the transactions involved undisclosed kickback payments from the sellers back to Herdrich and Hanneken, thereby defrauding the lenders. Long and Reinking shared the fees, 50/50 of the commission generated through the origination of the involved transactions.

A.   **660 W. 64th Street**

2. MS, the seller in this case, purchased the property at 660 W. 64th Street, Davenport, Iowa, in about 1998 for $68,000 and in 2003 listed it for sale for $84,900.

3. On September 16, 2004, MS and Herdrich signed a real estate purchase agreement for sale of the property to Herdrich for $95,000 (subsequently changed to $90,000).

- 15 -

Additionally, they signed a secret "Addendum to Real Estate Purchase Agreement" indicating that the actual sale price was $84,900 and agreeing, "The purchasee shall get the balance of the $95,000 less the $84,900. This amount after all closing costs of the purchasers. This amount is free and clear of any interest of the seller."

4. With respect to financing, Herdrich and Hanneken went to the owner of Crow Valley Mortgage, who directed Herdrich and Hanneken to Natalie Hynes (Long) and Mary Reinking, two loan officers who subsequently worked together on both of the transactions involving Herdrich and Hanneken.

5. Hanneken told the Crow Valley officers that the loan would involve "creative financing" (the kickback arrangement) and that Crow Valley would need to do what was necessary in order to "make the numbers work" so Herdrich and Hanneken qualified for the loan. Long and Reinking were aware or had reason to believe that the lender, Argent Mortgage, would not be advised of the kickback agreement.

6. On October 5, 2004, Long and/or Reinking, via Crow Valley Mortgage in Iowa, faxed or caused to be faxed to Argent Mortgage in Illinois a "Loan Submission Transmittal" to initiate a mortgage application. Besides identifying the borrower, property location, and loan amount needed ($90,000), the transmittal identified Crow Valley Mortgage as the broker and "Natalie or Mary" as the broker contacts. The transmittal form was one of 78 pages in the fax, the other 77 pages consisting of a credit report on Herdrich (pages 3-18) and US Bank monthly checking account statements for the period August 2003 through August 2004 (pages 19-78).

- 16 -

7. The account number for the checking account was x-xxx-xxxx-9192, and at the top of each page of each monthly statement the account holder was identified as "Robert Herdrich, xxxx xxxxxx xxxxx Road, Bettendorf, IA." In fact, the account number and statements were those of another person, and Long had pasted Herdrich's name and address over the top of the name and address of the true account holder. The bank statements reflected deposits totaling about $20,000 per month. In actuality, Herdrich's monthly income at that time was about $1,500.

8. On October 15, 2004, Mary Reinking, as "interviewer", completed a Uniform Residential Loan Application for Herdrich. With respect to assets, Reinking falsely listed the other person's checking account #x-xxx-xxxx-9192. Reinking also identified Herdrich as a "Salon Owner," when in actuality Herdrich was an employee of a salon at Younkers department store. The loan application was transmitted or mailed to Argent from Crow Valley Mortgage in Iowa to Argent in Illinois.

9. In approving and funding the $90,000 mortgage, Argent relied on the false information provided by Long and Reinking concerning Herdrich's employment, income, and assets. Argent also relied on the false information concerning the transaction, believing that the sale price was $90,000 when in fact it was $84,900. Neither Long, Reinking, the parties, or others persons who were aware of the actual terms of the transaction ever informed Argent about the kickback arrangement. Argent would not have funded the loan had it known the true terms of the transaction or had it been aware that the information provided concerning Herdrich's income, employment, and assets was false.

- 17 -

10.  At or shortly after closing, MS via her agent made a kickback payment of "the difference" (the spread between the higher, bogus sales price and the lower, actual sales price) to Herdrich and Hanneken.  The HUD-1 Settlement Statement signed by the parties and provided to Argent reflected that Herdrich was the buyer and reflected the bogus selling price of $90,000.

        **B.**     **503-509 61st Street**

11.  SL, seller of the multi-unit rental property at 503-509 61st Street, Davenport, IA, originally listed the property for $164,900.  SL was approached by Hanneken and Herdrich and their real estate agent, who proposed a higher selling price of $172,000 with a kickback payment to Herdrich and Hanneken after closing.  SL agreed, signing a secret agreement providing,"Seller agrees to credit Buyer outside of closing $4180.00 toward prepaid items, closing costs and improvements to the property."

12.  Hanneken and Herdrich went to Crow Valley Mortgage for the mortgage. Long and Reinking were aware or had reason to believe that there was an agreement to kickback money after closing to Herdrich and Hanneken and that this agreement would not be disclosed to the lender, New Century Mortgage.

13.  In support of Herdrich's application for a mortgage, on November 1, 2004, Long and/or Reinking, through Crow Valley Mortgage in Iowa, faxed or caused to be faxed to New Century Mortgage in California statements from US Bank for account #x-xxx-xxxx-9192 for the period August 2003 through August 2004.  At the top of each page of each US Bank monthly statement, the account holder was identified as "Robert Herdrich, xxxx xxxxxx xxxxx

- 18 -

Road, Bettendorf, IA." In fact, the true account holder was another person, and Long had pasted Herdrich's name and address over the top of the name and address of the true account holder.

14. On November 15, 2004, Long and/or Reinking, via Crow Valley Mortgage in Iowa, faxed or caused to be faxed to New Century in California the September and October 2004 statements for the same bank account, again falsely reflecting the account holder as Herdrich and deposits, respectively, of about $16,000 and $20,000 per month.

15. On November 24, 2004, Long and/or Reinking faxed or caused to be faxed from Crow Valley in Iowa to New Century in California a "Request for Verification of Deposit" form, verifying that Herdrich was the owner of account #xxxxxxxx9192. The form purported to bear the signature of a US Bank official verifying the information, but the signature had been forged.

16. On November 29, 2004, Crow Valley in Iowa faxed to New Century in California a "Uniform Residential Loan Application." It was completed by Long as interviewer, signed by Robert Herdrich, and dated December 2, 2004, the transaction closing date. Long knowingly entered false information on the form, listing Herdrich's monthly gross income as $20,407, when in fact Herdrich's monthly income was about $1,500 per month. Long also identified Herdrich as the three-year owner of the Rave Salon and Spa when in actuality Herdrich was an employee of a salon in a department store. Long also listed a business address and phone number listed for the Rave that were, respectively, Herdrich's home address and cell phone number.

- 19 -

17. Mary Reinking knew that this account information represented to belong to Robert Herdrich was false and knowingly, voluntarily and intentionally participated in the further operation of this scheme.

18. In approving the $163,400 loan amount, New Century relied on the false information provided by Long and Reinking concerning Herdrich's employment, income, and assets.

19. New Century also relied on the false information provided by Long, Reinking, and the parties concerning the terms of the transaction. The HUD-1 Settlement Statement signed by the parties at the closing on December 2, 2004, reflected that the selling price was $172,000 with a loan of $163,400. The HUD-1 did not reflect the kickback payment of $9294, which was made by SL to Herdrich after closing, and New Century was not otherwise informed of the secret kickback agreement.

20. New Century would not have funded the loan had it known about the payment or the false information provided concerning Herdrich's income, employment, and assets.

_March 25, 2010_
Date

Mary Lee Reinking
Defendant

_3-25 10_
Date

Andrew Larson
Attorney for Defendant

_3/25/10_
Date

Richard D. Westphal
Assistant United States Attorney